Second Nat. Bank v. Enright.

bill,'' service, of course, having been duly made, and we believe that the rule as here expressed obtains in this case. It is our conclusion, therefore, that the lien of Mary O. Palmer dates from February 3, 1911. Antedating the liens claimed by the defendants Bader and Herbeson, she undoubtedly has the first and best lien.

The defendants Bader and Herbeson claim that Mary O. Palmer, by virtue of her judgment in the court of common pleas, acquired a lien on a one-third interest in a farm in this county, held by D. T. Palmer; and ask that she be required to exhaust her remedy against this land before looking to the fund in the hands of the Citizens Savings & Trust Co., trustee.

The evidence discloses that the legal title to this land is in R. L. Palmer and that D. T. Palmer owns the equitable title only. This being true, Mary O. Palmer did not acquire a lien on the land as claimed by Bader and Herbeson. *Kemper* v. *Campbell*, 44 Ohio St. 210 [6 N. E. 566].

The evidence also shows that prior, valid and subsisting liens against the interest of D. T. Palmer in this land already exceed the value thereof. For these reasons the application must be refused.

Decree accordingly.

MARVIN and WINCH, JJ., concur.

---

## BANKS AND BANKING

[Hamilton (1st) Court of Appeals, July 12, 1915.]

Jones, Jones and Gorman, JJ.

*SECOND NAT. BANK OF CINCINNATI V. C. J. ENRIGHT ET AL.

**Bank Knowingly Receiving Check Deposited with Another Bank Fifteen Minutes before Closing for Insolvency, Takes it with Notice of Defenses.**

A check on a Newport (Ky.) bank was deposited by E in the Metropolitan Bank of Cincinnati fifteen minutes before its doors were closed not again to be reopened. The check was turned over by the Metropolitan to the Second National, which credited the amount of the check on an overdraft of the Metropolitan. The president of the Second National had full knowledge of the condition of the Metropolitan. E stopped payment on the check, and the Second National sued him. *Held:* That the Second Na-

*Motion to certify overruled by the Supreme Court, October 9, 1915.

tional had notice of the defective title of the endorser of the check, and moreover did not take the check for value but for collection, and its claim against the maker of the check fails on both grounds.

ERROR.

*Jelke, Clark & Forchheimer*, for plaintiff in error.

*Cogan, Williams & Ragland* and *H. A. Reeve*, for defendants in error.

## JONES (E. H.), J.

This action was brought in the common pleas court by the Second National Bank against C. J. Enright, on a check for $2,000 drawn by him on the Newport National Bank in favor of the Metropolitan Bank & Trust Co.

Mr. Enright deposited the check to his account in the latter bank on Saturday, September 16, 1911. At that time he had a balance in said bank to his credit of $433 and owed the bank nothing. The Newport bank was ordered by Mr. Enright not to pay the check, and payment was accordingly refused; hence this suit.

For a week or more before said day an inspector from the state banking department had been in daily conference with the officers of the Metropolitan National Bank which, on account of its impaired assets and irregular and illegal methods of business, was to be closed by the hand of the law, unless certain prescribed conditions were complied with. The time for compliance had been fixed. September 16th was Saturday, on which day of the week this bank and other similar institutions closed at noon. It had been decreed by lawfully constituted authority that the bank could not be reopened on Monday morning unless certain conditions and requirements be met. The bank officials failed to comply, and the doors were not again opened for business after noon of that day. It was 11:45 when Mr. Enright deposited his check with the teller of the bank, fifteen minutes before the bank ceased business for all time.

There probably was no design on the part of the bank or its employees to defraud Enright. But the acceptance of the check by this toppling, tottering bank at such time and under such circumstances was a fraud, and the title to the check thus secured was defective. 5 Cyc., 499; Sec. 8160 G. C.

On the afternoon of the day it was deposited, the check, together with other commercial paper, was deposited by the Metropolitan with the Second National Bank. On the following Monday morning the last named bank (plaintiff in this action) credited the Metropolitan Bank with $2,000 and applied same to the reduction of an overdraft of $9,000 shown to have existed against the Metropolitan Bank at the close of business on Saturday the 16th. From this it is contended that plaintiff is a "holder in due course" as same is defined in Sec. 8157 G. C. This section provides that one is a "holder in due course" of an instrument when he takes "it in good faith and for value" and when "at the time it was negotiated to him he had not notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The evidence shows plainly that the plaintiff in error fails to meet these conditions and is therefore not a holder in due course. The condition of the Metropolitan Bank at the time it received the check was well known to Mr. Galbreath, president of the plaintiff bank, who had attended one meeting, if not more, where the condition of the bank was under discussion by its officers and Mr. Romer, representing the State Banking Department. And on September 18th, when the check was applied by plaintiff to the overdraft of the Metropolitan Bank, the latter concern had been seized by Romer on behalf of the state. This action closely followed a midnight meeting like the one above mentioned which, too, was attended by Galbreath.

These facts, it seems to us, dispose of the claim that the Second National Bank had "no notice of the defect in the title of the person negotiating" the check to it. We think the evidence establishes with equal clearness that plaintiff did not take the check "for value."

The cashier of the plaintiff bank testified that the check was received by it "for collection." This is strenuously denied by counsel for plaintiff, who contended that this evidence of their own witness is refuted by other evidence and all the circumstances of the transaction. While there may be some doubt as to the accuracy of the statement of the cashier when considered in connection with the relation between the two banks and the cus-

tom and practice prevailing between them as to similar deposits, yet we are inclined to the view that the cashier's testimony was correct, and that he truthfully could not have testified otherwise.

Under ordinary conditions and in the usual course of business we have every reason to believe that the Second National Bank upon refusal of payment of a check received by it, as this Enright check was, would immediately upon report that the check was not honored by the bank upon which it was drawn, cancel any credit that might have been given the depositor of the check and charge same to his account.

We think, therefore, that the acceptance of the check and credit given the Metropolitan by plaintiff, were conditional. In other words, it was received "for collection" as the cashier said, and no such title vested in the plaintiff as is claimed in this case and as would entitle it to sue Enright thereon. The transfer of the check to the plaintiff was not, therefore, a negotiating of it but rather a bailment.

If, however, it was negotiated "for value," then plaintiff had notice of indorser's defective title, and took the check not "in due course," but subject to all the defenses which are available to Enright as against the original holder.

Upon the admitted or uncontroverted facts of the case the court below might well have instructed a verdict for defendant.

Its judgment will be affirmed.

JONES (O. B.) and GORMAN, JJ., concur.